WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Ronald M. Arlas, Esq., SBN 59091
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 477-9200

WRIGHT, FINLAY & ZAK, LLP
Ronald M. Arlas, Esq. SBN 59091
907 Sir Francis Drake Blvd.
Kentfield, Ca. 94904
Tel: 415/230-4350; Fax: 415/455-0370
rarlas@wrightlegal.net

Attorneys for Defendant CENTRAL MORTGAGE COMPANY

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALANOA FUAPAU,<br><br>        Plaintiff<br><br>vs.<br><br><br>CENTRAL MORTGAGE COMPANY, et al.,<br><br>        Defendants | Case No. 3:14-cv-00421-NC<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT BY DEFENDANT CENTRAL MORTGAGE COMPANY<br><br>Date:    May 7, 2014<br>Time:   1:00 p.m.<br>Place:   Courtroom A, 15th Floor |

///

///

///

///

///

///

///

# TABLE OF CONTENTS

|   |   |   | Page No. |
|---|---|---|---|
| I. | INTRODUCTION AND FACTS | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | FRCP RULES 12(b)(l) and 12(h)(3) | 2 |
| | B. | PLAINTIFF FAILS TO PLEAD FRAUD WITH THE REQUISITE PARTICULARITY PURSUANT TO FRCP RULE 9(b) | 3 |
| | C. | FAILURE TO INCLUDE THIS LAWSUIT AS AN ASET IN HER BANKRUPTCY SCHEDULES MEANS THIS CASE MUST BE DISMISSED | 4 |
| | D. | FRCP RULE 12(b)(6) STANDARD | 8 |
| | E. | INDIVIDUAL CAUSES OF ACTION | 8 |
| | | 1. The First Cause of Action Fails to State a Claim | 8 |
| | | 2. The Second Cause of Action Has the Same Problem as the First Cause of Action | 11 |
| | | 3. The Third Cause of Action Fails Because of the Same Reasons the Second Cause of Action Must be Dismissed | 12 |
| | | 4. The Fourth Cause of Action is Not Pled Against CMC | 12 |
| | | 5. Because the Prior Causes of Action Must Be Dismissed, So Must the Fifth Cause of Action | 12 |
| III. | CONCLUSION | | 13 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAIN BY DEFENDANT CENTRAL MORTGAGE COMPANY

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Ashcroft v Iqbal*,
  129 S. Ct. 1937 (May, 2009) .......................................................................... 8

*Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*,
  910 F.2d 1540, 1548 (7th Cir.1990) .............................................................. 6

*Beauchamp v. Los Gatos Golf Course*
  (1969) 273 Cal.App.2d 20, 32, 77 Cal.Rptr. 914 .......................................... 11

*Bell Atlantic v Twombly*,
  550 US 544, 127 S. Ct., 1955 (2007) ............................................................ 8

*Benham v. Aurora Loan Servs.*,
  No. C–09–2059 SC, 2009 WL 2880232, at *2–3 (N.D.Cal. Sept. 1, 2009)." ........... 11

*Bradler v. Craig*
  (1969) 274 Cal.App.2d 466, 473, 476, 79 Cal.Rptr. 401 ................................ 11

*Californians For Disability Rights v. Mervyn's, LLC*,
  39 Cal.4th 223, 227, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006) ........................ 13

*Castaneda v. Saxon Mortgage Servs., Inc.*,
  687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) ............................................... 10

*Connor v. Great Western Sav. & Loan Assn.*
  (1968) 69 Cal.2d 850, 864, 73 Cal.Rptr. 369, 447 P.2d 609 .......................... 11

*Cornejo v. JPMorgan Chase Bank*,
  2011 WL 6149246 at 3* (C.D. Cal. Dec. 12, 2011), .................................... 4

*Donaldson v. Bernstein*,
  104 F.3d 547, 555-56 (3rd Cir.1997) ............................................................. 7

*Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.*
  (1975) **57 52 Cal.App.3d 484, 488, 489, 125 Cal.Rptr. 549; ........................ 11

*Giordano v. Wachovia Mortg., FSB*,
  2011 WL 1130523 at *3 (N.D.Cal., 2011) ................................................... 10

*Hague v Wells Fargo Bank, N.A.*,
  2012 WL 1029668 at *5 (N.D. Cal. Mar. 26, 2012) ...................................... 9

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAIN BY DEFENDANT CENTRAL MORTGAGE COMPANY

*Hamilton v State Farm Fire & Cas. Co.,*
270 F. 3d 778 (2001)..................................................................................................5, 7

*Hardy v. Indymac Federal Bank,*
263 F.R.D. 586, 593–94 (E.D.Cal.2009) ......................................................................11

*Hay v. First Interstate Bank of Kalispell, N.A.,*
978 F.2d 555, 557 (9th Cir.1992)..................................................................................6, 8

*In re Coastal Plains,*
179 F.3d 197, 208 (5th Cir.1999), *cert. denied,* 528 U.S. 1117,
120 S.Ct. 936, 145 L.Ed.2d 814 (2000) .......................................................................6, 7

*In re GlenFed Sec. Litig.,*
42 F.3d 1541, 1548 (9th Cir.1994)................................................................................4

*Jablon v. Dean Witter & Co.,*
614 F.2d 677, 682 (9th Cir.1980)..................................................................................9

*Maharaj v. Bankamerica Corp.,*
128 F.3d 94, 98 (C.A.2 1997.........................................................................................6

*Navarro v Block,*
250 F.3d 729, 732 (9th Cir. 2002).................................................................................8

*Nymark v. Heart Fed. Sav. & Loan Ass*n.,
231 Cal. App. 3d 1089, 1095-1096,.............................................................................11

*Oaks Management Corp. v. Superior Court,*
145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006)................................................11

*Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.,*
2007 WL 4144892........................................................................................................13

*Parsons v. Tickner,*
31 Cal.App.4th 1513, 1525, 37 Cal.Rptr.2d 810 (1995)..............................................10

*Pascual v. Wells Fargo Bank, N.A.,*
2013 WL 4066946 at *4 (N.D. Cal. Aug. 8, 2013 ........................................................9

*Philadelphia, W., & B.R. Co. v. Howard,*
13 How. 307, 335-337, 14 L.Ed. 157 (1851) ...............................................................6

*Rangel v. DHI Mortgage Co., Ltd.,*
No. CV F 09–1035 LJO GSA, 2009 WL 2190210, at *3 (E.D.Cal. July 21, 2009) .....11

- iii –

*Rissetto v. Plumbers & Steamfitters Local 343,*
   94 F.3d 597, 600-601 (9th Cir.1996)........................................................................5

*Russell v. Rolfs,*
   893 F.2d 1033, 1037 (9th Cir.1990)..........................................................................5

*United States v. C.I.T. Constr. Inc.,*
   944 F.2d 253, 259 (C.A.5 1991)................................................................................6

*United States v. Hook,*
   195 F.3d 299, 306 (C.A.7 1999);...............................................................................6

*Vess v. Ciba–Geigy Corp. U.S.A.,*
   317 F.3d at 1106........................................................................................................4

*Wagner v. Benson*
   (1980) 101 Cal.App.3d 27, 34–35, 161 Cal.Rptr. 516............................................11

*Walling v. Beverly Enters.,*
   476 F.2d 393, 397 (9th Cir.1973)..............................................................................4

*Western Mo. Medical Center,*
   140 F.3d 1140, 1143 (C.A.8 1998);...........................................................................6

*Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,*
   932 F.Supp. at 867; Fed. R. Bankr.P. 1009(a)..........................................................8

**Statutes**

Business & Prof. Code §17200 .....................................................................................13
Business & Prof.Code § 17204 .....................................................................................13
28 USC §1332(a) ........................................................................................................2, 3
550 US at 555..................................................................................................................8

**Rules**

FRCP Rule 12(b)(6). ........................................................................................... 4, 11, 12
FRCP Rule 12(h)(3).....................................................................................................2,3
FRCP Rule 9(b)...............................................................................................................4

I. **INTRODUCTION AND FACTS**

Plaintiff TALANOA FUAPAU ("plaintiff") filed her original complaint on 1/28/14. Because counsel for defendant CENTRAL MORTGAGE COMPANY ("CMC") had a medical emergency, plaintiff graciously granted an extension for CMC to respond to her complaint.

The complaint consists of five causes of action, only four of which are pled against CMC. CMC now files its Motion to Dismiss ("MTD") those four causes of action in plaintiff's original complaint.

Turning to the facts alleged in the complaint, it appears that plaintiff owned a piece of investment real estate located at 2048 55th Ave., Oakland, Ca. 94621 ("the Property"). See ¶4 on pg. 2 of plaintiff's complaint.[1] Apparently, plaintiff refinanced her Property in 2006 into a neg. am. loan. See ¶1 on pg. 1and ¶¶12-14 on pg. 4. Plaintiff's initial monthly mortgage payment was $910.28/mo. See ¶14 on pg. 4. In January, 2009, plaintiff's monthly loan payment increased to$1300/mo. According to ¶15 on pg. 4, when plaintiff called CMC to inquire about this increase, she was supposedly told that it was due to an increase in her taxes. Plaintiff then started paying this increased amount and continued to do so until August, 2012. See ¶14 on pg. 4. Plaintiff then alleges that while she was applying for a loan modification starting in Oct. 2012 [¶18 on pg. 5], "representatives" of CMC went to the rental property in December, 2012 and scared her tenants into moving almost four months later at the end of their lease in April, 2013. See ¶19 on pg. 5. Plaintiff also alleges that after she was told her loan mod application was complete on 3/11/2013, a NOD was recorded on 3/13/13. See ¶20 on pg. 6. However, since the subject property is a rental property, the California Homeowner's Bill of Rights ("HOBR") does not apply so therefore, it is irrelevant as to when an NOD was recorded in relation to an alleged completed loan mod application.

---

[1] All future references to pages and paragraphs are to those in the complaint unless otherwise indicated.

- 1 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAIN BY DEFENDANT CENTRAL MORTGAGE COMPANY

Plaintiff has brought three causes of action plus the ubiquitous B&P §17200 claim against CMC claiming that there were negligent misrepresentations made to her during her discussion with CMC in 2009 about the increase in her monthly payments and then the property inspectors supposedly "negligently or intentionally" scared away her tenants more than 3 months after they visited the property. None of these causes of actions are well pled. But before showing why this is so, CMC would submit that the complaint must be dismissed because of plaintiff's failure to plead the necessary requirements for a federal lawsuit based on diversity. 28 USC §1332(a). In addition, plaintiff filed a Chapter 13 Bankruptcy petition on or about 7/9/13. Plaintiff failed to list these claims in her BK schedules and is therefore estopped from proceeding with this case.

## II. ARGUMENT

### A. FRCP RULES 12(b)(1) and 12(h)(3)

FRCP Rule 12(b)(1) allows a party to challenge whether or not the Court has subject matter jurisdiction of a case. In this matter, plaintiff has failed to plead damages of at least $75K as required for diversity jurisdiction. 28 USC §1332(a) and FRCP Rule 12(h)(3). The only mention of this $75K requirement is in ¶3 on pg. 2, lines 14-15, as follows: "Further, the matter in controversy exceeds the sum of $75,000." That's it. There are no other actual facts pled to support the necessary minimum jurisdictional amount of $75K required to bring a case in federal court pursuant to 28 USC §1332(a).

For example, plaintiff mentions that she refinanced into a neg. am. loan in 2006 but never mentions what the principal amount of this subject loan was. Instead, she only talks about the fact that her initial payments were about $900/mo. See ¶12, pg. 4. Plaintiff does plead that her payments went to $1300/mo. in January, 2009, but again makes no mention of what the principal amount of the loan was. See ¶15, pg. 4. The only mention of another amount in all of the causes of action pled

against CMC is in ¶16 on pg. 5 when she states that got a bill for $5K and didn't understand why. However, nowhere does she allege that she did not pay the $5K or that she had any legal basis not to pay it. Thus, plaintiff's allegations in the First Cause of Action deal with the supposed misrepresentations of the service representatives when plaintiff called into CMC in 2009. See ¶¶33-34 on pg. 8. But, there are no facts pled in the First Cause of Action showing that she somehow suffered damages of at least $75K for paying according to the terms of the written loan documents she originally signed in 2006.

As to the Second and Third Causes of Action pled against CMC, they are mirror images of each other with the Second being for "negligent" interference with alleged economic advantage and the Third being for "intentional" interference with alleged economic advantage. Neither of these cause of actions states what the terms of the leases of the tenants were, whether or not they were up on 3/31/13 because they were term leases, and what possible connection there might be between an alleged visit by property inspectors to the subject property after plaintiff defaulted on her loan and the fact that the tenants moved from the property almost four months later. There are no facts alleged as to what rent she supposedly lost and whether or not she even lost any rent at all or was able to re-lease the premises immediately or shortly after the prior tenants moved.

The bottom line is that this entire complaint is bereft of any facts that must be pled in order to meet the minimum jurisdictional amount of $75K in order to bring a case in federal court pursuant to 28 USC §1332(a). As such, the entire complaint must be dismissed pursuant to FRCP Rules 12(b)(1) and (6) and 12(h)(3).

**B. PLAINTIFF FAILS TO PLEAD FRAUD WITH THE REQUISITE PARTICULARITY PURSUANT TO FRCP RULE 9(b).**

The first three causes of action pled against CMC all involve allegations of misrepresentations or fraud such that plaintiffs are asking for punitive damages. See ¶37 on pg. 9

and item #8 in the Prayer on pg. 15. FRCP Rule 9(b) requires that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the case of *Cornejo v. JPMorgan Chase Bank*, 2011 WL 6149246 at 3* (C.D. Cal. Dec. 12, 2011), the federal court laid out the general rule for pleading particularity, as follows:

"A pleading is sufficient under Fed.R.Civ.P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir.1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d at 1106 (internal quotation marks and citations omitted). It is not sufficient to merely identify the transaction. Rather "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." Id. (citations omitted)." [Emphasis added.]

In this complaint, not only doesn't plaintiff plead the requisite particularity, but she also fails to identify what was supposedly false about any of the representations to her, either with regards to the statements concerning the increase in her monthly payments or the supposed statements to her tenants. Without being able to affirmatively state that these statements were false or were misrepresentations, plaintiff fails to meet the standards of FRCP Rule 9(b). As such, this is another basis for dismissing this complaint as to defendant CMC, pursuant to FRCP Rule 12(b)(6).

**C. FAILURE TO INCLUDE THIS LAWSUIT AS AN ASSET IN HER BANKRUPTCY SCHEDULES MEANS THIS CASE MUST BE DISMISSED.**

As plaintiff notes in ¶29 on pg. 7, she filed a Chapter 13 Bankruptcy petition on 7/9/2013. Defendant is also submitting concurrently hereto a Request for Judicial Notice ("RJN"). RJN Exh. 1 is a copy of plaintiff's filed Chapter 13 petition. On 7/22/13, plaintiff filed a Summary of her Bankruptcy schedules. See RJN Exh. 2. RJN Exh. 3 is a copy of plaintiff's Schedule B-Personal Property which plaintiff also filed with the Bankruptcy Court on 7/22/2013. CMC would refer this Court to Item #21 on pg. 2 of Schedule B where plaintiff was required to list all potential contingent claims, including claims such as the ones listed in her complaint. Plaintiff did not do so on this

document nor did she amend her Schedule B even after she filed this present action on 1/30/2014. In fact, plaintiff has never amended her Schedule B or her proposed Chapter 13 plan to take into account her attempt to squeeze money out of these named defendants.

It is defendant's position that plaintiff is precluded from proceeding with this action because she failed to list the civil claims in this lawsuit as assets of her bankruptcy estate. The leading case on this issue is *Hamilton v State Farm Fire & Cas. Co.,* 270 F. 3d 778 (2001). In this case, Hamilton filed a Chapter 7 BK to stop the foreclosure on a piece of rental property. During the bankruptcy, State Farm denied Hamilton's claim for vandalism damage to his rental property based on its position that he had been the cause of the vandalism. On 10/27/98, after his Chapter 7 petition had been dismissed, Hamilton filed suit against State Farm breach of the covenant of good faith and fair dealing and breach of contract. State Farm removed the case to federal court. During the case, State Farm filed a Motion for Summary Judgment ("MSJ") primarily based on the theory of judicial estoppel. The trial court granted State Farm's MSJ by holding,

"...that Hamilton's claim was barred by the doctrine of judicial estoppel because Hamilton took contradictory positions by first failing to amend his bankruptcy schedules to include his insurance claim and pending bad faith action against State Farm, and then persisting in his attempts to recover on the claims against State Farm." *Id.* at 782.

In its opinion, the 9th Circuit explained the theory of judicial estoppel in this context as follows:

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600-601 (9th Cir.1996); *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990). This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." *Russell,* 893 F.2d at 1037." *Id.* at 782.

The Court then went on to discuss the three factors that the US Supreme Court stated were

required in order to apply the doctrine of judicial estoppel[2]. Briefly, they are

"First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook*, 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center*, 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards*, 690 F.2d at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces *783 no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (C.A.5 1991), and thus no threat to judicial integrity. *See Hook*, 195 F.3d at 306; *Maharaj*, 128 F.3d at 98; *Konstantinidis*, 626 F.2d at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See Davis*, 156 U.S. at 689, 15 S.Ct. 555, 39 L.Ed. 578; *Philadelphia, W., & B.R. Co. v. Howard*, 13 How. 307, 335-337, 14 L.Ed. 157 (1851);" *Id.* at 782-83.

The Hamilton Court also stated that the theory of judicial estoppel could be applied where inconsistent positions were taken in two different cases.

"The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases. *Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation"); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit)" Id. at 783. [Emphasis added.]

Finally, the Hamilton Court turned to the issue of the applicability of the theory of judicial estoppel when one of the cases involved is a bankruptcy filing. It made it very clear that judicial estoppel was especially appropriate in situations involving bankruptcies when it held,

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action <u>not raised in a reorganization plan</u> or otherwise mentioned in the debtor's schedules or disclosure statements. *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) <u>(holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules</u>);" *Id* at 783. [Emphasis added.]

---

[2] The three factors were quoted from the case of *New Hampshire v Maine*, 532 US 742 (2001).

In this case, plaintiff might assert that her Chapter 13 filing has not yet been completed and therefor judicial estoppel should not apply. However, the Hamilton Court addressed this issue and found that a discharge was not required before judicial estoppel would apply. It stated,

"We now hold that Hamilton is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings, and that a discharge of debt by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated. Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may "accept" the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways. *See, e.g., In re Coastal Plains,* 179 F.3d at 210 (finding that judicial acceptance was satisfied when the bankruptcy court lifted a stay based in part on the debtor's nondisclosure in its bankruptcy schedules and in a lift-stay stipulation); *Donaldson v. Bernstein,* 104 F.3d 547, 555-56 (3rd Cir.1997) (holding that judicial acceptance was satisfied when the court approved the debtor's plan of reorganization)." *Id* at 784. [Emphasis added.]

In this case, plaintiff has yet to inform the Bankruptcy Court of this present lawsuit. Instead, she engaged in a legal fight to cram down the security interest of CMC in the Property. Eventually, CMC and plaintiff agreed that the value of the Property would be reduced from over $396K to $132,500. See RJN Exh. 4 for a copy of the Stipulation and Order Approving the reduction in value of the Property. See also RJN Exh. 5, plaintiff's Second Amended Chapter 13 plan, filed 9/18/13 wherein she already was proposing a cram-down on the Property's secured valuation.

It is defendants' position that plaintiffs' failure to include the claims now asserted in this present civil case in their Bankruptcy petition estops them completely from proceeding in this case, especially since plaintiffs had legal counsel throughout their bankruptcy proceeding. The 9th Circuit's further discussion in the *Hamilton case, supra,* supports this position fully.

"In this case, we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules "impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" *In re Coastal Plains,* 179 F.3d at 207-208; *Hay,* 978 F.2d at

557; 11 U.S.C. § 521(1). The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. *In re Coastal Plains,* 179 F.3d at 208; *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F.Supp. at 867; Fed. R. Bankr.P. 1009(a) (schedules may be amended as a matter of course before the case is closed). .... <u>However, it is his failure to disclose assets on his bankruptcy schedules that provides the most compelling reason to bar him from prosecuting claims against State Farm.</u> *In re Coastal Plains,* 179 F.3d at 208." *Id* at 785. [Emphasis added.]

### D. FRCP RULE 12(b)(6) STANDARD

It is axiomatic that a FRCP 12(b)(6) motion tests the legal sufficiency of a claim. See *Navarro v Block,* 250 F.3d 729, 732 (9th Cir. 2002). The leading case of *Bell Atlantic v Twombly,* 550 US 544, 127 S Ct., 1955 (2007) set up the standard a court must use when reviewing a 12(b)(6) motion. The Supreme Court stated: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." 550 US at 555, 127 S. Ct. at 1964-65.

In *Ashcroft v Iqbal,* 129 S. Ct. 1937 (May, 2009), the Supreme Court quoted its language in *Twombly, supra,* as follows: "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... 'to state a claim for relief that is plausible on its face.'" 129 S. Ct. at 1949. It then went to discuss the necessity for a complaint to go beyond simple legal conclusions pled as "facts." It said, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice (citation omitted) (Although for the purposes of a motion to dismiss we must take all of the factual allegations as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation (internal quotation marks omitted))." *Iqbal,* 129 S. Ct. at 1949-1950.

### E. INDIVIDUAL CAUSES OF ACTION

1. THE FIRST CAUSE OF ACTION FAILS TO STATE A CLAIM.

The First Cause of Action is for alleged Negligent Misrepresentations made to plaintiff

supposedly in 2009. See ¶33 on pg. 8. There are two main reasons why this cause of action fails to a claim upon which relief can be granted.

The first problem that plaintiff has is that she is charged with knowledge of her loan documents regardless of whether or not she can read English as a first language. Plaintiff fails to allege what her native language is so it is impossible to determine if she was entitled to a formal translation of the documents when she refinanced in November, 2006. In addition, plaintiff admits that she had an adult child who could help her with English when necessary. See ¶16 on pg. 5. The federal courts have routinely held that the statute of limitations starts to run at loan origination and therefore, if plaintiff attempts to plead causes of action that involve issues concerning terms of the original loan, then the statute of limitations starts to run at the time the loan documents are signed.

In this case, a 3 year statute of limitations would apply to the First Cause of Action. See CCP §338(d). However, the 3 years began to run at the time the loan originated. As stated in the recent case of *Pascual v. Wells Fargo Bank, N.A.*, 2013 WL 4066946 at *4 (N.D. Cal. Aug. 8, 2013

"Generally, "the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud"*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980). "Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Id.* <u>All loan terms were contained in the loan documents that Plaintiff signed, so even if Plaintiff did not read them, he had constructive notice of all terms at the time of origination.</u> *See, e.g., Hague v. Wells Fargo Bank, N.A.*, C11–02366 TEH, 2012 W L 1029668, at * 5 (N. D.Cal. Mar. 26, 2012) (fraud claim was time-barred when the terms of the loan were provided at signing, such that "reasonable diligence would have enabled Plaintiff to discover the problem."). Because fraud is governed by a three-year limitations period, Plaintiff's fraud claims are time-barred." [Emphasis added.]

The federal case of *Hague v Wells Fargo Bank, N.A.*, 2012 WL 1029668 at *5 (N.D. Cal. Mar. 26, 2012) is also directly on point in that the plaintiff therein tried to claim that the problems with his loan did not occur until the payments started to rise. The Honorable Thelton E. Henderson disagreed when he said,

"Defendant argues that the claims for fraud and constructive fraud are outside the three-year statute

of limitations under California Code of Civil Procedure § 338(d). Plaintiff argues that the delay was justified because Plaintiff did not discover the problems with their loan until the payments rose, several years after the loan was initially taken out. However, in order for a delay to be excused, a plaintiff must plead and prove their lack of means of obtaining knowledge of the fraud through the exercise of reasonable diligence. *Parsons v. Tickner,* 31 Cal.App.4th 1513, 1525, 37 Cal.Rptr.2d 810 (1995). <u>Where there existed, from the time the loan was made, papers which disclosed the terms of the loan, it would seem that reasonable diligence would have enabled Plaintiff to discover the problem. See, e.g. Giordano v. Wachovia Mortg., FSB, 2011 WL 1130523 at *3 (N.D.Cal., 2011)</u>. Therefore, these claims are time-barred and the motion to dismiss is GRANTED; the fraud and constructive fraud claims are DISMISSED WITH PREJUDICE."

In this case, not only does plaintiff admit that she obtained a neg. am. loan at the time she obtained the refinance, but the Deed of Trust ("DOT") she executed showed that she had an adjustable loan and that it could negatively amortize if she only paid the bare minimum. See ¶12, pg. 4, line 18. RJN Exh. 6 is copy of the DOT, along with Adjustable Rate Balloon Rider ("the Rider"), both of which were recorded on 11/29/2006. The Rider makes it clear that her interest rate basically changed every month after the initial one month teaser rate. See ¶2(B) on pg. 17 of RJN Exh. 6. Thus, plaintiff is not being accurate when she claims that her payment stayed exactly the same for the first three years of her loan. She is charged with the knowledge of all of the terms of her loan and therefore when and why changes to her monthly payment occurred. Plaintiff filed this present case on 1/30/2014, more than 7 years after the loan was funded and the DOT was recorded. As such, this First Cause of Action must be dismissed because of the statute of limitations.

Secondly, in order to claim "negligent" misrepresentation, plaintiff has to plead that defendant had a legal duty to her with regards to being accurate in their discussions about servicing issues. Not only hasn't plaintiff made such allegations, but even if she did, they would not represent the state of the law as between a lender, or in this case, a servicer and a borrower. As stated in *Castaneda v. Saxon Mortgage Servs., Inc.,* 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009)

"Plaintiffs cite no authority for the proposition that MERS, Saxon, or Novastar owed a duty to not cause plaintiffs harm in their capacities as lender, nominal beneficiary, <u>and loan servicer</u>. Generally, "[a]bsent 'special circumstances' a loan transaction 'is at arms-length' " and no duties arise from the

loan transaction outside of those in the agreement. *Rangel v. DHI Mortgage Co., Ltd.,* No. CV F 09-1035 LJO GSA, 2009 WL 2190210, at *3 (E.D.Cal. July 21, 2009) (quoting *Oaks Management Corp. v. Superior Court,* 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006)). <u>Absent contrary authority, a pleading of an assumption of duty by MERS, Saxon, or Novastar, or a special relationship, plaintiff cannot establish MERS, Saxon, or Novastar owed a duty of care.</u> *See Hardy v. Indymac Federal Bank,* 263 F.R.D. 586, 593–94 (E.D.Cal.2009); *Benham v. Aurora Loan Servs.,* No. C–09-2059 SC, 2009 WL 2880232, at *2-3 (N.D.Cal. Sept. 1, 2009)." [Emphasis added.]

See also *Nymark v. Heart Fed. Sav. & Loan Assn.,* 231 Cal. App. 3d 1089, 1095-1096,

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence. (*Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 32, 77 Cal.Rptr. 914.)
///
However, as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Wagner v. Benson* (1980) 101 Cal.App.3d 27, 34–35, 161 Cal.Rptr. 516; *Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.* (1975) **57 52 Cal.App.3d 484, 488, 489, 125 Cal.Rptr. 549; *Bradler v. Craig* (1969) 274 Cal.App.2d 466, 473, 476, 79 Cal.Rptr. 401.) Thus, for example, a lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. (*Wagner v. Benson,* supra, 101 Cal.App.3d at pp. 33–35, 161 Cal.Rptr. 516.) "The success of the [borrower's] investment is not a benefit of the loan agreement which the [lender] is under a duty to protect [citation]." (*Id.,* at p. 34, 161 Cal.Rptr. 516.)[6] "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.' " (*Id.,* at p. 35, 161 Cal.Rptr. 516; quoting *Connor v. Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 864, 73 Cal.Rptr. 369, 447 P.2d 609.)"

The bottom line is that plaintiff has not and cannot state that CMC owed her any duty of care acting in its role as the loan servicer for her investment loan. Thus, the First Cause of Action should be dismissed without leave to amend pursuant to FRCP Rule 12(b)(6).

2. **THE SECOND CAUSE OF ACTION HAS THE SAME PROBLEM AS THE FIRST CAUSE OF ACTION.**

The Second Cause of Action is another claim based in negligence. Again, plaintiff has stated no facts to show that CMC had any duty of care in inspecting the subject property. There are no allegations that the property inspection team caused any physical damage to the property. As such, plaintiff has no basis to show that CMC, or its agents, owed any duty to refrain from telling the tenants that their landlord was in default on the loan and the property was subject to foreclosure, especially IF the statements allegedly attributed to the inspectors were true.

CMC would submit that it was true that plaintiff was in default on her loan in December, 2013. RJN Exh. 7 is a true and correct copy of the Notice of Default ("NOD") recorded against the subject property on 3/13/201. The second full paragraph of the NOD shows that plaintiff was in arrears $41,915.25 as of 3/12/13. Because plaintiff has alleged that she was only paying $1300/mo. from 2009 to Sept. 2012, [see ¶¶14-15 on pg. 4], simple math shows that plaintiff had been in arrears for approximately 30 months [$41,915.25/$1300/mo. = 32.24 months.] at the time the NOD was recorded. CMC does not have to submit another document to be able to assert that at the time the property inspectors allegedly spoke to plaintiff's tenants in December, 2012, plaintiff had been delinquent for a number of months before that time. As such, if asked by the tenants, the inspectors were clearly in their right to tell them that their owner/landlord was delinquent and a foreclosure was going to commence on this investment property.

Because of the above, CMC would submit that this Second Cause of Action must also be dismissed pursuant to FRCP Rule 12(b)(6).

3. **THE THIRD CAUSE OF ACTION FAILS BECAUSE OF THE SAME REASONS THE SECOND CAUSE OF ACTION MUST BE DISMISSED.**

The Third Cause of Action is for "intentional" interference with prospective economic advantage. It is exactly the same as the Second Cause of Action except that it states that the alleged actions of the property inspectors were "intentionally" done to get the tenants to leave before the completion of the foreclosure. See ¶53 on pg. 11. CMC would submit that this Third Cause of Action must be dismissed for the same reasons that the Second Cause of Action should be dismissed.

4. **THE FOURTH CAUSE OF ACTION IS NOT PLED AGAINST CMC.**

5. **BECAUSE THE PRIOR CAUSES OF ACTION MUST BE DISMISSED, SO MUST THIS FIFTH CAUSE OF ACTION.**

The Fifth Cause of Action is for alleged violations of B&P §17200 as against all defendants. Plaintiff alleges that because defendants violated statutory duties somehow expressed in all four prior

causes of action, all of the named defendants are therefore in violation of B&P §17200. In other words, plaintiff's §17200 claim is derivative of her prior causes of action. See §§69-73 on pg. 14. However, since none of the prior causes of action have been validly pled, this Fifth Cause of Action must also be dismissed.

Additionally, plaintiff has not really suffered any monetary damages due to the alleged actions of CMC or its agents. This is particularly true in light of the cram-down of the security interest in the Property. See RJN Exhs. 4 and 5. The only harm to plaintiff was self-inflicted when she failed to make her required mortgage payments and the foreclosure process was started. Plaintiff then struck back by filing her Chapter 13 Petition and obtained an almost 65% reduction in the secured valuation of the Property. See RJN Exh. 4 in comparison to the original value stated in ¶2 of RJN Exh. 5. Thus, plaintiff cannot bring a B&P §17200 claim because she does not meet the standing requirement imposed by Prop. 64. As stated in *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 2007 WL 4144892 at *5,

> "However, after Proposition 64, which California voters approved at the 2004 General Election, <u>a private person or entity has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition.</u>" (§ 17204, as amended by Prop. 64, § 3; see also *Californians For Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006)). Thus, the language of the UCL, as amended by Proposition 64, makes clear that a showing of causation is required as to each representative plaintiff. ("Actions for any relief ... shall be prosecuted exclusively ... by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus, & Prof.Code § 17204)." [Emphasis added.]

### III. CONCLUSION

In sum, CMC would submit that this entire complaint must be dismissed without leave to amend. Not only has she failed to plead facts that show she has met the $75K jurisdictional minimum, but because of her actions in her bankruptcy proceeding, she cannot ever meet that limit as she has suffered no damages and she is judicially estopped from bringing this present action.

Wherefore, CMC would respectfully request that the entire complaint, and each and every cause of action pled against it be dismissed without leave to amend.

Respectfully submitted,
WRIGHT, FINLAY & ZAK, LLP

Dated: March 27, 2014      By: ___/s/Ronald M. Arlas, Esq.___
Ronald M. Arlas, Esq., Attorneys for
Defendant Central Mortgage Company

# CERTIFICATE OF SERVICE

I, Catherine Lawler, declare as follows:

I am employed in the County of Marin, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 907 Sir Francis Drake Blvd., Kentfield, CA 94904.

On March 27, 2014, I served the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT BY DEFENDANT CENTRAL MORTGAGE COMPANY** on all interested parties in this action as follows:

Eunji Cho, Esq.
Jessica Ryan Galletta, Esq.
Matthew David Mellon, Esq.
MELLON LAW FIRM
411 Borel Avenue, Suite 320
San Mateo, CA  94402
Telephone:     (650) 638-0120
Fax:           (650) 638-0125
E-Mail:        mellenlaw@yahoo.com

[X]  (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.

[X ]  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27, 2014, at Kentfield, California.

*Catherine Lawler*
Catherine Lawler

1
**CERTIFICATE OF SERVICE**