1
2
3
4
5
6
7
8      UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA

10     SAN FRANCISCO DIVISION

11

12   TALANOA FUAPAU,                          Case No. 14-cv-00421 NC

13            Plaintiff,                       **ORDER GRANTING MOTION TO**
                                               **DISMISS FIRST AMENDED**
14       v.                                    **COMPLAINT, WITH LEAVE TO**
                                               **AMEND**
15   CENTRAL MORTGAGE COMPANY,

16            Defendant.

17                                             Re: Dkt. No. 27

18

19        Plaintiff Talanoa Fuapau brings this action alleging multiple violations by defendant

20   Central Mortgage Company in processing her loan modification agreement.  Fuapau alleges

21   that CMC made negligent misrepresentations, negligently and intentionally interfered with

22   prospective economic advantage, and violated California Business and Professions Code §

23   17200.  CMC moves to dismiss Fuapau's claims for lack of subject matter jurisdiction and

24   for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court finds

25   that Fuapau failed to properly allege facts for the Court to determine whether it has subject

26   matter jurisdiction, and therefore dismisses her amended complaint but grants leave to

27   amend.  To prevent a third deficient complaint, the Court also addresses the merits of

28   CMC's Rule 12(b)(6) claims against Fuapau's amended complaint.

# I. BACKGROUND

In 2006, Fuapau was current with her loan payments for an investment property in Oakland, California but wanted to refinance her loan to get better terms. Dkt. No. 19 at ¶¶ 11, 12. Fuapau worked with a broker to assist her in negotiating a refinance agreement. *Id.* at ¶ 12. The broker was able to secure a refinance agreement in the amount of $360,000. *Id.* Fuapau's broker told her that her monthly payment under the new agreement would be approximately $900 per month. *Id.* Fuapau believed that the monthly payment would remain at approximately $900 per month for the life of the loan. *Id.* However, the broker did not explain the terms of the agreement and, in particular, the negative amortization feature of the loan. *Id.*

From December 2006 to August 2012, Fuapau made her loan payments in full and on time. *Id.* at ¶ 14. Around January 2009, Fuapau's monthly payment increased to approximately $1,300. *Id.* at ¶ 15. Fuapau contacted CMC to inquire about the monthly payment increase and was informed that it was due to an increase in property taxes. *Id.* Fuapau continued to make her monthly payments until around September 2012 when she received a billing statement for a monthly payment of almost $5,000. *Id.* at ¶ 16. Because of her limited English, Fuapau requested that her daughter contact CMC regarding the billing statement. *Id.* Fuapau's daughter contacted a CMC representative who stated that the increase was the result of increased property taxes and that the only way to decrease the monthly payment was to apply for loan modification. *Id.* at ¶ 17.

Around October 2012, Fuapau began the process of applying for a loan modification by submitting documents and application materials to CMC. *Id.* at ¶ 18. Approximately two months later, Fuapau learned that two CMC representatives visited Fuapau's property, took photographs, and told her "tenants to hurry and move out because the property was in active foreclosure and would soon be sold." *Id.* at ¶ 19. Fuapau's tenants subsequently moved out on April 1, 2013, and informed Fuapau that they were moving out because of the advice from the CMC representatives. *Id.* On March 11, 2013, the CMC representative confirmed that the modification application was complete and that Fuapau should wait for

1  the application to be reviewed. *Id.* at ¶ 20.  However, two days later, unbeknownst to

2  Fuapau, CMC recorded a notice of default for Fuapau's property. *Id.*  According to the

3  complaint, at the time the notice of default was recorded, Fuapau's daughter was still

4  working with a CMC representative on the loan modification application. *Id.*

5  ## II. PROCEDURAL HISTORY

6  Fuapau filed her original complaint on January 28, 2014.  Dkt. No. 1.  CMC filed a

7  motion to dismiss on March 27, 2014.  Dkt. No. 12.  Prior to the hearing, Fuapau filed a

8  notice of intent to file an amended complaint, and this Court therefore ruled that the motion

9  to dismiss was moot.  Fuapau subsequently filed her first amended complaint on April 17,

10  2014.  Dkt. No. 18.  CMC filed its second motion to dismiss Fuapau's first amended

11  complaint on May 9, 2014.  Dkt. No. 27.  Additionally, on May 15, 2014, Fuapau and

12  defendants OWCEN and HSBC Bank USA filed a joint stipulation for dismissal with

13  prejudice pending approval of settlement by the Bankruptcy Court.  Dkt. No. 29.  All parties

14  have consented to the jurisdiction of a magistrate judge.  Dkt. Nos. 10, 17, 18.

15  ## III. DISCUSSION

16  ### A.    CMC's Request for Judicial Notice

17  Concurrently with its motion to dismiss, CMC submits a request for judicial notice.

18  Dkt. No. 28.  The submitted documents are purportedly true and correct copies of:  (1) a

19  Deed of Trust recorded with the Alameda County Recorder Office on November 29, 2006;

20  (2) a notice of default executed by the trustee on March 12, 2013, and recorded in the

21  Alameda County Recorder's Office on March 13, 2013; (3) the order approving stipulation

22  and stipulation to reduce the value of the subject property, filed on March 10, 2014; and (4)

23  Fuapau's second amended chapter 13 plan, filed September 18, 2013.  CMC also submits a

24  supplemental request for judicial notice.  Dkt. No. 31-1.  The submitted documents are

25  purportedly true and correct copies of:  (5) voluntary petition for chapter 12 bankruptcy,

26  filed by Fuapau on July 9, 2013; (6) four pages extracted from the bankruptcy schedules

27  filed by Fuapau in conjunction with her Chapter 13 bankruptcy petition; and (7) a complete

28  copy of all of the bankruptcy schedules filed by Fuapau on July 22, 2013, from which

Case No. 14-cv-00421 NC
ORDER GRANTING MOTION TO          3
DISMISS

1   copies of the four pages contained in Exhibit 6 have been extracted.

2       Generally, consideration of extrinsic evidence converts a motion to dismiss into a

3   motion for summary judgment. Fed. R. Civ. P. 12(d).  However, there are two exceptions

4   to this general rule: first, a court may take notice of any document whose authenticity is not

5   contested and upon which the plaintiff's complaint necessarily relies; second, a court may

6   take judicial notice of public records.  *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir.

7   2001).  Federal Rule of Evidence 201 permits a court "to judicially notice a fact that is not

8   subject to reasonable debate because it[] can be accurately and readily determined from

9   sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  However,

10  the Court must not take notice of any facts contained within the records that may be

11  reasonably disputed.  *Lee*, 250 F.3d at 688-89.

12      Accordingly, the Court takes judicial notice of Exhibit 1 as a true and correct copy of

13  an official public record.  The Court finds Fuapau's complaint necessarily relies on the

14  existence of the Deed of Trust.  *See* Dkt. No. 19 at ¶ 13.  Additionally, Fuapau filed no

15  objection to CMC's request for judicial notice.  Therefore, the Court finds no reason to

16  believe there is any dispute over the authenticity of Exhibit 1, or that there is any dispute of

17  the facts contained within the Deed of Trust.  The Court declines to take judicial notice of

18  the remaining Exhibits 2 through 7, as they are irrelevant to the Court's analysis of CMC's

19  motion to dismiss.

20  **B.    Fuapau's Amended Complaint Does Not Sufficiently Allege Diversity**
21  **Jurisdiction**

22      Federal courts are courts of limited jurisdiction and are presumptively without

23  jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal

24  courts have original jurisdiction over "all civil actions arising under the Constitution, laws,

25  or treaties of the United States," and over "all civil actions where the matter in controversy

26  exceeds the sum or value of $75,000 . . . and is between citizens of different states."

27  28 U.S.C. § 1331; 28 U.S.C. § 1332(a).  For the purposes of determining diversity of

28  citizenship, a corporation has dual citizenship in the state of its incorporation and in its

Case No. 14-cv-00421 NC
ORDER GRANTING MOTION TO         4
DISMISS

principal place of business.  28 U.S.C. § 1332(c).  Therefore, in order to properly establish diversity jurisdiction a corporation must be incorporated in and have its principal place of business in a state different from "any member of a class of plaintiffs."  28 U.S.C. § 1332(d)(2)(A).  Additionally, if a defendant is an LLC the Court needs to know the citizenship of each member because "like a partnership, an LLC is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Here, Fuapau's amended complaint fails to establish total diversity of citizenship among the parties.  Fuapau's allegation that CMC is a citizen of Arkansas because CMC is headquartered in Little Rock, Arkansas is insufficient because Fuapau does not also allege CMC's state of incorporation.  Likewise the allegations of citizenship for the non-moving defendants, OWCEN Loan Servicing and HSBC Bank, also fail to allege the state of incorporation.  Fuapau additionally fails to establish total diversity with OCWEN Loan Servicing because defendant is an LLC.  To adhere to diversity requirements, Fuapau must allege the citizenship of all of OCWEN's members.  *Id.*  If "the information necessary to establish the diversity of the citizenship of [OCWEN is] not reasonably available to [Fuapau]," then Fuapau may plead the citizenship of CMC upon information and belief. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d. 1082, 1086 (9th Cir. 2014).  Fuapau has not alleged the citizenship of OCWEN's members, nor that this information is not reasonably available to her, and therefore she has not properly alleged diversity jurisdiction in regards to any defendant.

Therefore, without alleging where the defendants are incorporated, in addition to defendants' principal place of business, the Court cannot determine whether diversity jurisdiction is proper.  In her second amended complaint Fuapau must either properly plead total diversity of citizenship amongst all parties, request leave to take jurisdictional discovery, or drop the claims against non-diverse parties.  If Fuapau can amend her claims to establish total diversity of citizenship among the parties, her general allegations that "this matter in controversy exceeds the sum of $75,000", will suffice to meet the amount in

1   controversy requirement for diversity jurisdiction. *See St. Paul Mercury Indem. Co. v. Red*

2   *Cab Co.*, 303 F.3d 283, 288-89 (1938) ("[T]he sum claimed by the plaintiff controls if the

3   claim is apparently made in good faith.  It must appear to a legal certainty that the claim is

4   really for less than the jurisdictional amount to justify dismissal."); *see also Crum v. Circus*

5   *Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) ("Generally, the amount in controversy

6   is determined from the face of the pleadings.").

7   **C.   CMC's Motion to Dismiss**

8        A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

9   sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a

10  motion to dismiss, all allegations of material fact are taken as true and construed in the light

11  most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

12  Cir. 1996).  The Court, however, need not accept as true "allegations that are merely

13  conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis.*

14  *Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not allege

15  detailed factual allegations, it must contain sufficient factual matter, accepted as true, to

16  "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

17  544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the

18  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

19  *Iqbal*, 556 U.S. 662, 678 (2009).  If a court grants a motion to dismiss, leave to amend

20  should be granted unless the pleading could not possibly be cured by the allegation of other

21  facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

22        **1.   Fuapau's Claim for Negligent Misrepresentation Does Not Meet The**
            **Heightened Pleading Requirements for Alleging Fraud**
23

24        Fuapau's first claim of negligent misrepresentation does not meet the heightened

25  pleading requirements for alleging fraud.  Because negligent misrepresentation is a

26  subspecies of actual fraud, Fuapau's claim must satisfy Federal Rule of Civil Procedure

27  9(b). Cal. Civ. Code § 1572.  To plead fraud or mistake under Rule 9(b), "a party must

28  state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

1    knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

2    Civ. P. 9(b). "The plaintiff must set forth what is false or misleading about a statement, and

3    why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

4    (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)); *see Moore v.*

5    *Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (holding that "[m]ere

6    conclusory allegations of fraud are insufficient."). "Rule 9(b) ensures that allegations of

7    fraud are specific enough to give defendants notice of the particular misconduct which is

8    alleged to constitute the fraud charged so that they can defend against the charge and not

9    just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731

10   (9th Cir. 1985). Accordingly, "[t]he complaint must specify such facts as the times, dates,

11   places, benefits received, and other details of the alleged fraudulent activity." *Neubronner*

12   *v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

13        The Court applies California substantive law to the claims of fraud, because Fuapau

14   brings this action under diversity jurisdiction. *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64

15   (1938); *see also Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 993 (E.D. Cal. 2012) ("To

16   determine if the elements of fraud have been pleaded to state a cause of action, courts look

17   to state law."). Under California law, the essential elements of a claim for negligent

18   misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) without

19   reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on

20   the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the

21   party to whom the misrepresentation was directed, and (5) damages. *Fox v. Pollack*, 181

22   Cal. App. 3d 954, 962 (1986).

23        Fuapau's claim of negligent misrepresentation fails to meet the heightened fraud-

24   specific pleading requirements of Rule 9(b). To sufficiently plead actual fraud, Fuapau

25   must go beyond simply alleging that CMC made a misrepresentation that her increased

26   monthly payments were due to increased property taxes; she must allege specific facts to

27   support her claim that the statement was false. If Fuapau is alleging that CMC fraudulently

28   misrepresented that the increased monthly payment was due to increased property taxes in

order to "induced Plaintiff to rely upon it and continue making increased payments", she must provide material facts to support this contention.  A mere conclusory allegation is insufficient.  *See* Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1106.  Additionally, Fuapau alleges no facts to support her contention that she suffered actual damages as a result of the alleged fraud.  Fuapau only provides conclusory allegations that she "suffered and continue to suffer damage to her credit, excessive late fees and charges, the imminent loss of her Property, severe emotional distress, frustration, fear, anger, helplessness, nervousness, and anxiety . . . ."  Dkt. No. 19 at ¶ 36.  Because damages are an essential element of a fraud claim under California law, Fuapau must allege damages with specificity in order to survive a motion to dismiss.  *See Vess*, 317 F.3d. at 1105.  Because the Court dismisses the claim for Negligent Misrepresentation for failing to meet the requirements of Rule 9(b), the Court does not reach the issue of whether the statute of limitations also bars the claim.  Dkt. No. 27 at 7.

### 2. Fuapau's Claims for Negligent and Intentional Interference With Prospective Economic Advantage Is Sufficient to State A Claim

In addition to the claim of negligent misrepresentation, Fuapau's second and third causes of action allege that CMC negligently and intentionally interfered with a prospective economic relationship between Fuapau and her tenants.  Dkt. No. 19 at ¶¶ 38-56.  Because Fuapau does not plead distinct facts for each alleged cause, the Court addresses Fuapau's second and third claims in tandem.  The Court finds that Fuapau's claims for both negligent and intentional interference with prospective economic advantage properly state claims upon which relief may be granted.

The Court applies California substantive law to the claims of both negligent and intentional interference with prospective economic advantage, because Fuapau brings this action under diversity jurisdiction.  *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64 (1938).  The tort of negligent interference with prospective economic advantage is established where "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant

1  knew of the existence of the relationship and was aware or should have been aware that if it

2  did not act with due care its actions would interfere with this relationship and cause plaintiff

3  to lose in whole or in part the probable future economic benefit or advantage of the

4  relationship; (3) the defendant was negligent; and (4) such negligence caused damage to

5  plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in

6  whole or in part the economic benefits or advantage reasonably expected from the

7  relationship." *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).  A

8  plaintiff bringing a claim for the tort of intentional interference with prospective economic

9  advantage must allege the same elements as negligent interference except that the defendant

10  intentionally acted to disrupt an economic relationship.  *Korea Supply Co. v. Lockheed*

11  *Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003).

12       Here, Fuapau alleges facts sufficient to state a claim for both negligent and intentional

13  interference with prospective economic advantage.  According to the complaint, Fuapau

14  purchased the property as an investment property, which Fuapau rented to tenants in

15  exchange for rent payment.  Dkt. No. 19 at ¶¶ 42, 51.  Fuapau further alleges that CMC

16  knew of the economic relationship between Fuapau and the tenants because Fuapau

17  provided rent information to CMC as part of the loan modification application.  *Id.* at ¶¶ 43,

18  52.  According to the complaint, CMC representatives acted both negligently and

19  intentionally, when two individuals introduced themselves as representatives from CMC to

20  Fuapau's tenants, stated to the tenants that the property will be sold very soon at a trustee's

21  sale, took photographs of the property, and then advised the tenants to hurry and move.  *Id.*

22  at ¶¶ 42, 51.  Fuapau's claim of intentional interference specifically alleges that CMC

23  intended to disrupt the relationship so that CMC could induce the tenants to move out prior

24  to the end of the lease, thereby avoiding the eviction process when CMC foreclosed

25  Fuapau's property.  *Id.* at ¶ 53.  According to the complaint, CMC representatives disrupted

26  Fuapau and the tenants' relationship, as Fuapau's tenants panicked, and on April 1, 2013,

27  moved out of the property stating the alleged imminent trustee's sale as the reason.  *Id.* at ¶¶

28  45, 54.  Lastly, Fuapau alleges that she has suffered damages as a result of CMC's

Case No. 14-cv-00421 NC
ORDER GRANTING MOTION TO          9
DISMISS

1    interference, including, but not limited to the loss of rent payments. *Id.* at ¶¶ 45, 55.

2           CMC argues that both claims of negligent and intentional interference with

3    prospective economic advantage should be dismissed for the same reason. Dkt. No. 27 at

4    10:19. CMC contends that Fuapau does not allege facts sufficient to show that CMC's

5    representatives had any duty to refrain from telling Fuapau's tenants that their landlord was

6    in default on the loan and that the property was subject to foreclosure, "especially if the

7    statements allegedly attributed to the inspectors were true". *Id.* at 9:18-24. CMC argues

8    that the CMC inspectors "were clearly in their right" to tell the tenants that Fuapau was

9    delinquent and a foreclosure was going to commerce on this investment property because

10   Fuapau was delinquent on her loan payments. The Court does not find CMC's reasoning

11   persuasive.

12          Regardless of whether Fuapau was delinquent, Fuapau's allegations challenge the

13   timing of CMC's representatives statements that her property was in active foreclosure.

14   Dkt. No. 19 at ¶ 19. Fuapau alleges that CMC had yet to initiate any foreclosure

15   proceedings against her at the time that CMC representatives negligently and intentionally

16   interfered with the relationship between Fuapau and the tenants. *Id.* at ¶¶ 19, 20. Fuapau

17   further alleges that the property was not in active foreclosure or in danger of being

18   imminently sold at a trustee sale because she was in the process of applying for a loan

19   modification. *Id.* at ¶ 20. Therefore, assuming Fuapau is able to correct her jurisdictional

20   pleading defects, Fuapau's claim that CMC negligently and intentionally interfered with a

21   prospective economic advantage will survive a Rule 12(b)(6) motion.

22          **3.      Fuapau Has Sufficiently Pled a Cause of Action for a Violation of Business**
23                    **and Professions Code § 17200**

24          Fuapau alleges the fifth cause of action against all defendants for unfair competition

25   in violation of California Business and Professions Code § 17200.[1] Dkt. No. 19 at 14.

26   California Business and Professions Code § 17200 allows "violations of other laws to be

27   _____

28   [1] The Court does not address Fuapau's fourth cause of action because it is not alleged against CMC.

treated as unfair competition that is independently actionable." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (citations omitted).  Unfair competition includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Id.* (quoting Cal. Bus. & Prof. Code § 17200).  Fuapau argues that CMC's conduct alleged in the causes of action for negligent misrepresentation, negligent and intentional interference with prospective economic advantage, "constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 *et seq.*"  Dkt. No. 19 at ¶ 69.  CMC argues that because Fuapau's § 17200 claim is tethered to her first, second and third causes of action, which CMC argues are insufficiently pled, the Court must dismiss the fifth cause of action.  Dkt. No. 27 at 10.  Because the Court finds that Fuapau's second and third claims for negligent and intentional interference with a prospective economic advantage are sufficiently pled the Court does not dismiss Fuapau's fifth cause of action.

## IV. CONCLUSION

The Court dismisses Fuapau's amended complaint for lack of subject matter jurisdiction.  However, the Court grants Fuapau an additional opportunity to properly allege subject matter jurisdiction and to amend her first cause of action by alleging facts that meet the heightened fraud-specific pleading requirements.  Fuapau has fourteen days to file an amended complaint curing the deficiencies in her pleadings.

IT IS SO ORDERED.

Date:  July 28, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge